**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **CONNECTICUT GENERAL LIFE** | § | |
| **INSURANCE COMPANY, AND CIGNA** | § | |
| **HEALTH AND LIFE INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **WINDHAVEN SURGICAL CENTER LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company file this Original Complaint against Defendant Windhaven Surgical Center LLC ("Windhaven").

**I.**
**NATURE OF ACTION**

1.     Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (hereinafter collectively "Cigna") insure or provide administrative services to employee health and welfare benefit plans. This case centers on a scheme pursuant to which Windhaven submitted duplicitous claims to Cigna seeking to obtain excessive payments of benefits to which Windhaven is not entitled to receive under plans Cigna administers or insures. In short, as described in more detail below, Windhaven engaged in healthcare profiteering that victimized Cigna, its health care benefits plans, and its participants on a regular and ongoing basis, increasing healthcare costs exponentially for Texas employers and employees.

2.      In an effort to recover substantial payments from Cigna, Windhaven successfully lured plan members into agreeing to have surgical procedures performed on an outpatient basis at Windhaven's out-of-network surgical center by severely under-collecting, or in many cases outright waiving, the amounts Cigna plan members are obligated to pay providers under Cigna administered benefit plans.   Moreover, Windhaven not only routinely waived or drastically under-collected the plan members' share of financial responsibility for the cost of services provided by Windhaven, it also misrepresented to the plan members the amounts that Windhaven billed to Cigna, and refused to hold the plan members responsible for any amounts that Cigna refused to pay.   This type of improper practice is called "fee forgiving" in the healthcare industry.   As a result of Windhaven's calculated fee forgiving scheme, Cigna was fraudulently induced into paying Windhaven more than $2.6 million dollars.

3.      The net effect of these payments was to artificially increase the cost of healthcare to Cigna's customers.   In this action, Cigna seeks to recover the payments made to Windhaven and to prevent Windhaven from submitting any additional improper claims to Cigna.   By bringing this action, Cigna is ensuring that its customers are charged only appropriate amounts for services rendered and thereby helping to maintain the affordability of healthcare coverage for individuals and employers.

4.      Furthermore, Cigna's claims in this case have implications beyond the interaction between Cigna and Windhaven.   The majority of the health benefit plans under which Windhaven received payments of benefits are administrative services only ("ASO") plans sponsored by employers.   As of the date of the filing of this Complaint, Windhaven submitted 408 claims for payment to Cigna, and 349 of those claims arise under ASO plans.

5.      In most instances, any amounts Cigna recovers on behalf of ASO plans will be returned to the employers or plan sponsors, and will not be retained by Cigna.  Accordingly, Cigna brings its claims in this case to not only recover the overpayments that were made to Windhaven, but also to restore the assets of ASO benefit plans it administers for the benefit of the employees covered under those plans.

## II.
## PARTIES

6.      Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company are corporations organized under the laws of the State of Connecticut, with their principal places of business in the State of Connecticut.

7.      Defendant Windhaven Surgical Center LLC is a Texas limited liability company that may be served with process through its registered agent, Keith Biggers, at 918 Parkview Lane, Southlake, Texas 76092.

## III.
## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Windhaven because Windhaven is organized under the laws of the State of Texas and conducts business in the State of Texas.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treaties of the United States.  Specifically, Cigna asserts claims in this case that arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., as Cigna acted as an ERISA fiduciary in administering claims submitted by Windhaven, and Cigna, as the claims administrator, is exercising its duties as an ERISA fiduciary in seeking to recover overpayments that were made

in connection with employee health and welfare benefits plans that fall within the scope of ERISA.

10.     This Court also has original jurisdiction over Cigna's claims in this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the parties and the amount in controversy in this action is in excess of $75,000.00, exclusive of interest and costs.

11.     The Court has supplemental jurisdiction over the remaining common law and state law claims pursuant to 28 U.S.C. § 1367(a).  *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1018 (5th Cir.1993) (court may exercise supplemental jurisdiction over state-law claims where original jurisdiction exists for claim arising under ERISA).

12.     Furthermore, Cigna is a proper party to an action maintained under ERISA because Cigna administers plans subject to ERISA, and Cigna has been delegated the discretion or authority to adjudicate claims for benefits under those plans.

13.     Venue is proper in the Eastern District of Texas because Windhaven may be found in this judicial district, and a substantial part of the events giving rise to the claims in this action occurred in the Eastern District of Texas. 29 U.S.C. §§ 1132(e)(2), 1391(b)(1), and 1391(b)(2).  Specifically, many of the patients identified in the claims for reimbursement submitted by Windhaven reside in this District, the services provided to Cigna's customers for which Windhaven obtained payments from Cigna were performed in this District, and, upon information and belief, Windhaven conducts business within this District.

# IV.
# FACTUAL BACKGROUND

### *Relevant Facts Regarding Managed Care and Cigna Administered Plans.*

14.     Cigna, among other things, insures and administers employee health and welfare benefit plans.

15.     Cigna offers both fully insured plans, and plans where the employers or plan sponsors fund the benefits available under the plans and contract with Cigna to provide administrative services only with respect to the plans, such as processing claims for payments submitted by healthcare providers and adjudicating appeals of adverse benefits decisions by plan members.

16.     The vast majority of the plans under which Windhaven obtained benefits are governed by ERISA because those plans are employer-funded or fully insured group health benefit plans that identify the benefits available, the sources of financing, the procedures for obtaining benefits, and provide that the plan members' and beneficiaries' rights under the plans are governed by ERISA.

17.     Cigna acts as a claims fiduciary, either as a third party administrator of employer-sponsored and employer-funded group health benefit plans, or as an insurer of employer-sponsored group health benefit plans.

18.     The plans Cigna insures or administers provide for different levels of benefits available to plan members depending on, among other things, whether the healthcare provider the member selects is in-network or out-of-network.

19.     In-network providers are providers with whom Cigna has entered into an agreement pursuant to which Cigna has agreed to reimburse providers at specified rates for medical services provided to Cigna plan members.   In turn, the providers agree to provide

healthcare services to Cigna plan members and to accept reimbursement at the contractually specified rates.  In-network providers also agree to not bill Cigna plan members the difference between their billed charges and the contractually agreed upon reimbursement rate, a practice commonly known as "balance billing."

20.     Out-of-network providers, on the other hand, are providers with whom Cigna has not entered into any agreement and where Cigna has not agreed to pay any predetermined amounts for care provided to Cigna plan members.  Out-of-network providers charge and bill Cigna and the Cigna plan members at rates the providers independently set.  With few exceptions, the amounts out-of-network providers charge for their services are higher than the contractual rates agreed to between Cigna and in-network providers, and out-of-network providers can "balance bill" Cigna plan members.

21.     Cigna plan members are not foreclosed from receiving care from out-of-network providers simply because out-of-network providers generally charge more than in-network providers.  However, to sensitize plan members to the increased cost of care associated with out-of-network providers, Cigna plan members are required to pay a higher percentage of the charges out-of-network providers bill for their services.

22.     More specifically, to mitigate the risk that plan members will make uninformed choices regarding healthcare providers, thereby increasing the cost of healthcare to employers, plan sponsors, and the plan members, Cigna administered and insured plans contain mechanisms that are intended to sensitize the plan members to the cost of care.  The foregoing mechanisms are manifested in the provisions of the plans that require the plan members to pay higher coinsurance, deductibles, and other portions of the out-of-network provider's charges for services.

23.     The plans also provide that charges submitted for payment to Cigna will be paid as a percentage of maximum reimbursable charges and that the plan members will be responsible for the difference between the amount paid by Cigna and the amount billed by the "out-of-network" provider.

24.     These cost-sharing mechanisms are not only critical to Cigna administered or insured plans, they underlie the managed care system.  It is well-established that if patients are required to pay for even a small portion of their care out of their own pockets, they will make more informed choices regarding medical care, and choose care that is medically necessary, and not simply free of charge.

**_Windhaven's Conduct._**

25.     Windhaven is a surgical center located in Plano, Texas where physicians perform surgical and related healthcare services on an out-patient basis.  Windhaven has not entered into a provider agreement with Cigna.   Therefore, Cigna processes all claims submitted by Windhaven on an out-of-network basis.

26.     Windhaven was established in 2006 and began submitting claims for reimbursement to Cigna in 2007.  Shortly after Windhaven began submitting claims to Cigna, the magnitude of claims submitted by Windhaven rose dramatically.

27.     In light of the meteoric rise in the number and dollar amount of the claims submitted by Windhaven, Cigna conducted an investigation into Windhaven's practices.  The investigation included an audit of billing records submitted by Windhaven, along with a survey of Cigna plan members who sought treatment at Windhaven, so that Cigna could obtain verification from its customers regarding the services provided by Windhaven and the amounts plan participants were required to pay for those services.

28.     The audit revealed that Windhaven has engaged in widespread fee forgiving. That is, if a Cigna plan member receives care from an out-of-network facility provider, the plans generally provide that the plan member is responsible for 30-40% of the provider's billed charges.

29.     The plans also generally provide that Cigna will pay a percentage of the billed charges or a maximum reimbursable charge, whichever is less, and that the plan member is responsible for the difference, if any, between the amount the provider bills and the amount Cigna is obligated to pay under the plans.

30.     It is the provider's obligation to inform the plan member of his or her financial responsibility and to collect the foregoing amounts from the plan members.

31.     Given its exorbitant charges, Windhaven recognized that Cigna's plan members could not afford to use Windhaven's facilities if Windhaven collected the required amount of patient responsibility from the plan members as doing so would frequently require out-of-pocket payments from plan members that totaled thousands, if not tens of thousands, of dollars. Therefore, Windhaven severely under-collected, and in many instances did not collect any amount of coinsurance, co-payment, deductible, and/or patient cost-sharing responsibility from the plan members.

32.     In addition, Windhaven created an artificial billing scheme in order to hide the true cost of care from the plan members.  Windhaven provided patients with an estimate of the cost of care before any medical care was provided to the plan members.  The estimates were based on the average amounts that Windhaven was reimbursed by Cigna and other payors.

33.     In the limited instances when Windhaven billed and collected any coinsurance or other amount of patient responsibility from the plan members, the amounts collected were a

percentage of the average reimbursement Windhaven received, and not the percentage of charges billed to Cigna as required by the plans.

34.     Windhaven also calculated the plan members' responsibility as 10-20% of Windhaven's estimate of charges (when it actually calculated any amount for patient responsibility), which is the percentage of responsibility plan members are responsible for paying for in-network providers.  As stated above, plan members are generally responsible for 30-40% of billed charges for out-of-network care under Cigna administered plans.

35.     Therefore, even though Windhaven obtained assignments from the plan members and claimed a right to benefits as an assignee of the plan members, Windhaven failed to bill and collect the amount of patient cost-sharing responsibility the plan members are required to pay under the plans.

36.     Moreover, after the plan members were treated, Windhaven often submitted claims for payment to Cigna based on charges that were significantly higher than the estimates that had been previously given to the plan members.

37.     Thus, Windhaven successfully induced plan members to be treated in Windhaven's facility by misrepresenting the cost-of-care to the patients, failing to bill and collect the appropriate amount of patient cost-sharing responsibility from the plan members, and submitting fraudulent and inflated charges to Cigna.

38.     The following are examples of the spurious claims Windhaven submitted to Cigna:

> a.     Windhaven submitted claims for reimbursement totaling $212,006.00 for certain out-patient procedures.  The plan member was not informed that Cigna would be billed $212,006.00 or that Windhaven was an out-of-network provider. Windhaven did not collect 40% of the billed charges from the patient and, in fact, that plan member stated she was shocked when she learned that charges in the amount of $212,006.00 were billed to Cigna.

    b.   Windhaven submitted claims for reimbursement to Cigna totaling $85,000.00 for an out-patient procedure.  Although the plan member was aware that Windhaven was out-of-network, the plan member did not pay any amount of co-insurance or other out-of-pocket expense to Windhaven.

    c.   Windhaven submitted a second set of claims for reimbursement totaling $85,000.00 to Cigna for certain out-patient procedures.  The plan member was told his financial responsibility would be between $850.00 and $875.00 for those charges.  The plan member paid $622.97 before the procedure was performed, and only paid an additional $590.78 after the procedure was performed.  Thus, Windhaven collected less than 2% of the billed charges from the plan member.

    d.   Windhaven estimated charges to one plan member in the amount $2,000.00, and informed the plan member her amount of financial responsibility would be roughly 10% of the estimated charges.  Windhaven billed Cigna $16,200.00 for those services, but only collected $176.70 from the plan member.  On a second claim for that plan member, Windhaven billed Cigna $25,500.00, but only collected $200 from the plan member.

39.    The foregoing examples, standing alone, demonstrate that the amounts Windhaven billed Cigna were contrived and inappropriate under the relevant plans.  Moreover, a comparison of those charges to reimbursement rates published by the Center for Medicare & Medicaid Services ("CMS") reinforces the conclusion that Windhaven's charges are a sham.

40.    For example, Windhaven billed Cigna anywhere between $16,333.00 and $42,500.00 for CPT codes 22551 and 22552, which are codes that indicate neck or spinal fusion procedures were performed on patients.  Under reimbursement rates published by CMS, the approved reimbursement rate for CPT code 22551 is $3,650.00, while CPT code 22552 is an inpatient only code and would not have been eligible for reimbursement in an outpatient facility.  Thus, Windhaven billed Cigna up to approximately 1,100% greater than the amount that would be paid for patients covered under Medicare.

41.    Similarly, Windhaven billed Cigna between $10,625.00 and $21,250.00 for CPT code 20931 (bone graft of spine).  The approved CMS physician reimbursement rate for CPT

code 20931 is $110.21.   In addition, pursuant to CMS policy, outpatient facilities are not permitted to submit separate bills for CPT code 20931.  Thus, Windhaven not only submitted claims to Cigna seeking payments as much as approximately 19,000% higher than the approved CMS reimbursement rates, but also submitted claims seeking payment for procedures that were not approved for billing in the manner submitted by Windhaven.[1]

42.     In total, at the time of the filing of this Complaint, Windhaven submitted at least 408 claims for payment to Cigna, seeking payment of more than $8.1 million dollars in benefits under plans administered or insured by Cigna.  A list of the claims Windhaven submitted is attached hereto as Exhibit "A."

43.     In light of the foregoing, it is apparent that Windhaven knowingly and intentionally misrepresented to Cigna that the claims submitted to Cigna were the actual, total charges for the products and services provided to the plan members.

44.     Windhaven also knowingly and intentionally failed to disclose that Windhaven had waived in full or in part the plan members' copayment, deductible, coinsurance and/or other patient cost-sharing responsibility under the plans.

45.     Windhaven knew that the charges it submitted to Cigna were false and that it was misrepresenting charges submitted to Cigna.  Cigna reasonably relied on the misrepresentations regarding the amount of the charges Windhaven billed to Cigna in processing and paying the claims submitted by Windhaven.

46.     As a result of Windhaven's conduct, Cigna has paid Windhaven more than $2.6 million to date.

---

[1] The claims described in Paragraphs 40 and 41 are examples of the claims submitted by Windhaven and are not an exhaustive list of the claims and CPT codes Windhaven billed to Cigna in which the amounts sought by Windhaven were significantly higher than approved reimbursement rates.

47.     Windhaven continues to submit claims to Cigna.  Upon information and belief, Windhaven continues to engage in fee forgiving to entice Cigna plan members to use Windhaven's facilities.

48.     After Cigna discovered Windhaven's conduct, Cigna began denying claims submitted by Windhaven.  In response, Windhaven occasionally submitted letters of appeal to Cigna in which Windhaven sought to overturn the decision to deny Windhaven's claims.

49.     In the appeal letters, Windhaven stated that plan members were informed that Windhaven was an out-of-network provider.  Windhaven also represented that it held the plan members responsible for any amounts billed to Cigna that were unpaid.  Windhaven further asserted that its charges were consistent with reasonable and customary charges submitted for similar services rendered in the same geographic area in which Windhaven is located.

50.     Windhaven's representations to Cigna were false.  Cigna plan members have advised Cigna that they were not informed that Windhaven was, and remains, an out-of-network provider.  The plan members also informed Cigna that Windhaven did not attempt to hold the plan members responsible for amounts that were billed to but not paid by Cigna.

51.     Windhaven's representations to Cigna were false and were made in attempt to induce Cigna into paying Windhaven additional amounts even though Windhaven knew or should have known the charges it submitted to Cigna were not payable under benefits plans administered or insured by Cigna.

***Windhaven's Claims are Not Payable.***

52.     In accordance with Department of Labor regulations, the plans issue summary plan descriptions ("SPDs") to plan members that summarize the terms and conditions under

which medical expenses, including outpatient surgical expenses, are covered and thus reimbursable under the terms of the plans.

53.     Among other things, the SPDs: (a) set forth the extent to which plan members are responsible for a portion of the costs they incur for healthcare services; (b) define the services that constitute covered expenses under the plans; and (c) contain exclusions that limit the circumstances under which claims are payable.

54.     In particular, the majority of the SPDs issued with respect to the plans under which Windhaven obtained benefits provide that the following charges are not covered:

    a.  charges which the plan members are not obligated to pay or for which they are not billed or for which they would not have been billed except that the plan members were covered under a plan;

    b.  to the extent that payment is unlawful where the plan member resides when the expenses are incurred;

    c.  charges that would not have been made if the plan member had no insurance; and

    d.  to the extent that the charges are more than the Maximum Reimbursable Charges.

55.     As described above, Windhaven did not hold the plan members responsible for the charges that were submitted to Cigna.   In addition, even though Windhaven, in some instances, calculated an amount of patient responsibility, Windhaven frequently did not bill and collect the full amount estimated by Windhaven.

56.     Windhaven also did not charge or seek to collect from the plan members the amounts that Windhaven billed to Cigna.   Upon information and belief, Windhaven wrote off amounts that Cigna or the plan members did not pay, and did not seek to hold the plan members responsible for those amounts.

57.     Thus, the plan members were not legally obligated to pay Windhaven for the amounts that were billed to the plan members or Cigna.   Upon information and belief, the

charges Windhaven billed Cigna would not have been billed except for the fact that the plan members are covered under the relevant employee health and welfare benefit plans.

58.     Therefore, Windhaven is not eligible to submit, and receive payments on, the claims that were submitted to Cigna.

59.     Accordingly, the sums Cigna paid to Windhaven were not payable and should be returned to Cigna.  In addition, certain amounts Cigna recovers on behalf of ASO plans will not be retained by Cigna, but will be returned to the employer or plan sponsor to restore the assets of ASO benefit plans it administers for the benefit of the employees covered under those plans.

### *Windhaven Has Not Returned Any Payments To Cigna.*

60.     Cigna notified Windhaven that it had deliberately misrepresented the charges billed to Cigna, and had failed to collect the appropriate amount of patient responsibility as dictated by the SPDs.

61.     Windhaven has not returned the payments that have been made by Cigna.  In addition, upon information and belief, Windhaven contends that the services allegedly provided to persons seeking benefits under plans administered or insured by Cigna constitute covered expenses under those plans.  As a result, an actual controversy exists regarding whether the claims submitted for reimbursement by Windhaven are claims for covered services and whether any amounts are payable under those claims.

# V.
## CAUSES OF ACTION

### Count I – Declaratory Relief
### (As to Both ERISA and Non-ERISA Claims)

62.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

63.     Windhaven purports to provide facilities and related services, including equipment and supplies, to patients receiving medical care who are covered under employee health and welfare benefit plans that are insured or administered by Cigna.

64.     The claims Windhaven submitted, and continues to submit, are claims for reimbursement for facility services provided to patients who are purportedly covered under employee health and welfare benefit plans that are insured or administered by Cigna.

65.     As described in the preceding paragraphs, the claims Windhaven submitted are for charges that are not covered under the relevant plans because the claims are based on false charges submitted to Cigna, Windhaven failed to collect the appropriate amount of patient responsibility from the plan members, and Windhaven did not hold the plan members responsible for the amounts charged to Cigna.

66.     As a result, any claims submitted by Windhaven are not reimbursable, and any payments Windhaven received under such claims should be returned to Cigna.  Despite that fact, Windhaven has not returned, the payments Cigna previously made to Windhaven.

67.     An actual controversy exists between Windhaven and Cigna regarding whether claims for reimbursement are covered and payable under employee health and welfare benefit plans that are insured or administered by Cigna.

68.     Cigna seeks a declaration that the claims for reimbursement submitted by Windhaven are not for covered services and are not payable under employee health and welfare benefit plans that are insured or administered by Cigna.

69.     Cigna further seeks a declaration pursuant to Section 502(a)(3) of ERISA that the claims submitted by Windhaven are not for covered services and are not payable under the terms of employee health and welfare benefit plans governed by ERISA.

70.     Cigna also seeks a declaration that Windhaven must return all sums received from Cigna.

71.     Cigna also seeks recovery of its reasonable and necessary attorneys' fees and costs.

## Count II – Claim for Overpayments Under ERISA
## (As to ERISA Claims Only)

72.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

73.     The majority of the employee health and welfare benefit plans that are insured or administered by Cigna are non-governmental plans that exist, are established and maintained by employers for the benefit of their respective employees, and do not fall within any ERISA safe-harbor provisions.  As a result, those plans are governed by ERISA.

74.     In addition, under the relevant plans, Cigna is an ERISA fiduciary and has the authority to review and make decisions on claims for benefits under the applicable plans. As claims administrator, Cigna is an ERISA fiduciary and has standing to sue under Section 502(a)(3) of ERISA to obtain appropriate equitable relief and enforce the terms of the ERISA governed plans.

75.     For the reasons described above, the products and services provided by Windhaven do not constitute covered services under the relevant health and welfare benefit plans.

76.     In reliance upon statements, representations, and demands for payment made by Windhaven, Cigna paid claims for reimbursement submitted by Windhaven.  As a result, Windhaven received payments of at least $2.6 million from Cigna.

77.     Windhaven was not entitled to seek, collect, or retain the payments it received from Cigna.  Windhaven has not returned the payments to Cigna.

78.     The ERISA governed plans grant Cigna, as an ERISA fiduciary, the right to recover any overpayments or other payments made under the plans.

79.     Pursuant to ERISA and the express terms of the plans, Cigna is entitled to recover the overpayments made to Windhaven.  Cigna seeks to recover all overpayments that have been made to Windhaven.

## Count III – Fraud
### (As to Non-ERISA Claims Only)

80.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

81.     At the time Windhaven submitted claims to Cigna, Windhaven knew material statements and representations in the claims were false.  Windhaven knew and intentionally failed to disclose that Windhaven waived or failed to collect in whole or in part copayments, deductibles, coinsurance, and other patient cost-sharing responsibility for the services provided to plan members.  Windhaven also knew that the claims submitted to Cigna reflected false and inflated charges.

82.     Windhaven submitted the claims to Cigna with the intent to induce Cigna to rely on Windhaven's false representations and omissions alleged herein. Windhaven's misrepresentations were material.

83.     Cigna reasonably relied on such material false statements and omissions and paid the false and misleading claims submitted by Windhaven. As a result of its conduct, Windhaven received payments in excess of $2.6 million from Cigna

84.     Cigna is informed and believes, and on that basis alleges, that Windhaven acted intentionally and in conscious disregard of the rights of Cigna, the plan sponsors, employers, and plan members, with malice and intent as Windhaven knew that its acts and conduct, as alleged herein, were fraudulent and would result in severe financial injury.  Cigna is entitled to an award of punitive damages in an amount to be determined at trial.

### Count IV – Claim for Money Had and Received
### (As to Non-ERISA Claims Only)

85.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

86.     The products and services for which Windhaven billed Cigna do not constitute covered services under the relevant health and welfare benefit plans.

87.     However, in reliance upon statements and misrepresentations made by Windhaven, Cigna paid claims for reimbursement submitted by Windhaven.  As a result, Windhaven received payments in excess of $2.6 million from Cigna.

88.     Under the terms of the plans, Windhaven was not entitled to seek, collect, or retain the payments it received from Cigna.  Windhaven has not returned the payments to Cigna.

89.     The money Windhaven received from Cigna belongs in equity and good conscience to Cigna, the plan sponsors, and employers.  Cigna seeks to recover all payments that have been made to Windhaven.

**Count V – Claim for Unjust Enrichment / Quantum Meruit**
**(As to Non-ERISA Claims Only)**

90.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

91.     The products and services for which Windhaven billed Cigna do not constitute covered services under the relevant health and welfare benefit plans.

92.     However, in reliance upon statements and misrepresentations made by Windhaven, Cigna paid claims for reimbursement submitted by Windhaven.  As a result, Windhaven received payments in excess of $2.6 million from Cigna.

93.     Under the terms of the plans, Windhaven was not entitled to seek, collect, or retain the payments it received from Cigna.  Windhaven has not returned the payments to Cigna.

94.     The money Windhaven received from Cigna belongs in equity and good conscience to Cigna, the plan sponsors, and employers.  Cigna seeks to recover all payments that have been made to Windhaven.

**VI.**
**JURY DEMAND**
**(As to Non-ERISA Claims Only)**

95.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

96.     With respect to Cigna's Non-ERISA claims, Cigna hereby demands a trial by jury.

## VII.
## DISCOVERY RULE

97.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

98.      Cigna did not know and could not have known, despite the exercise of reasonable diligence, of all facts giving rise to its claims prior to the institution of this lawsuit.

## VIII.
## CONDITIONS PRECEDENT

99.     All conditions precedent to Cigna's recovery have occurred or will occur prior to the entry of a final judgment in this civil action.

## IX.
## PRAYER FOR RELIEF

Based on the foregoing, Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company pray that the Court enter a judgment awarding the following:

a.  a declaration that the products and services provided by Windhaven do not constitute covered services under the employee health and welfare benefit plans administered or insured by Cigna and that Windhaven is not entitled to receive any payments on the claims for reimbursement that it has submitted or may submit in the future;

b.  return of any all monies paid to Windhaven on claims for reimbursement submitted by Windhaven;

c.  monetary damages for all harm suffered as a result of Windhaven's conduct;

d.  exemplary and punitive damages;

e.  pre-judgment and post-judgment interest;

f.  the reasonable and necessary attorneys' fees incurred;

g.   costs of court; and

h.   such other and further relief to which they may show themselves entitled in law or

equity.

Dated:  December 6, 2013                    Respectfully submitted,


                                            _/s/ Eliot T. Burriss_____
                                            James R. Nelson
                                            Texas Bar No. 14899800
                                            Eliot T. Burriss
                                            Texas Bar No. 24040611
                                            Andrew Mayo
                                            State Bar No. 24078953
                                            **DLA Piper LLP (US)**
                                            1717 Main Street, Suite 4600
                                            Dallas, Texas 75201
                                            (214) 743-4500 – telephone
                                            (214) 743-4545 – facsimile

                                            **COUNSEL FOR PLAINTIFFS
                                            CONNECTICUT GENERAL LIFE
                                            INSURANCE COMPANY and CIGNA
                                            HEALTH AND LIFE INSURANCE COMPANY**